# Exhibit 1

# REDACTED

████████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| Typemock, LTD.,<br><br>    Plaintiff,<br><br> v.<br><br>Telerik, Inc.,<br><br>    Defendant. | Case No.:  1:17-cv-10274-RGS<br><br>**JURY TRIAL DEMANDED**<br><br>████████████████ |

**DEFENDANT TELERIK, INC.'S [PROPOSED] AMENDED**
**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

   Telerik, Inc. ("Telerik") hereby answers Typemock, LTD's ("Typemock") Complaint for

Patent Infringement ("Complaint") as follows, and Telerik denies each of Typemock's

allegations, except as expressly set forth below.

**THE PARTIES**

1.  Telerik is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in ¶ 1 of the Complaint, and therefore, denies these allegations.

2.  Telerik admits that it is a corporation organized under the laws of Delaware.  Telerik

admits that process may be served through its registered agent – Corporation Service Company

d/b/a CSC-LAWYERS INCO, 211 E. 7th Street Suite 620, Austin, TX 78701.  Except as

expressly admitted, Telerik denies the allegations in ¶ 2 of the Complaint.

**JURISDICTION AND VENUE**

3.  Telerik admits that Typemock purports to bring an action for alleged patent infringement.

Telerik admits that this Court has subject matter jurisdiction over claims for alleged patent

infringement. Telerik denies that it has committed acts of patent infringement. Except as expressly admitted, Telerik denies the allegations in ¶ 3 of the Complaint.

4.      Telerik admits that this Court has personal jurisdiction over Telerik for the purposes of this action. Telerik denies that it has committed acts of patent infringement. Except as expressly admitted, Telerik denies the allegations of ¶ 4.

5.      Telerik admits that venue is proper in the Western District of Texas and the District of Massachusetts. Telerik denies that the Western District of Texas is the most convenient venue and responds that the District of Massachusetts presents a far more convenient forum for this action. Except as expressly admitted, Telerik denies the allegations of ¶ 5.

**TELERIK'S PURPORTED COPYING OF TYPEMOCK ISOLATOR**

6.      Telerik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 6 of the Complaint, and therefore, denies these allegations.

7.      Telerik admits that it develops software tools and components for web, mobile and desktop platforms, as well as application development, reporting, and quality assurance. Telerik admits that JustMock is one of its products. Except as expressly admitted, Telerik denies the allegations of ¶ 7.

8.      Telerik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 8 of the Complaint, and therefore, denies these allegations.

9.      Telerik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 9 of the Complaint, and therefore, denies these allegations.

10.     Telerik released one or more versions of JustMock. Except as expressly admitted, Telerik denies the allegations in ¶ 10 of the Complaint.

11.     Denied.

12.     Denied.

13.     Telerik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 13 of the Complaint, and therefore, denies these allegations.

14.     Telerik admits that Typemock sent a "Cease and Desist" letter dated November 4, 2016. Except as expressly admitted, Telerik denies the allegations in ¶ 14 of the Complaint.

15.     Telerik admits that Typemock sent a "Cease and Desist" letter dated November 4, 2016. Except as expressly admitted, Telerik denies the allegations in ¶ 15 of the Complaint.

## COUNT I

16.     To the extent a response is required to the allegations of ¶ 16 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-15 of the Complaint. Any allegations of ¶¶ 1-15 of the Complaint not expressly admitted herein are denied.

17.     Telerik admits that U.S. Patent No. 8,352,923 is entitled "Method and System For Isolating Software Components."  Telerik admits that U.S. Patent No. 8,352,923 is dated January 8, 2013. Telerik is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in ¶ 17 of the Complaint, and therefore, denies these allegations.

18.     Telerik admits that it provides some of the information on the website: http://www.telerik.com/products/mocking.aspx. Telerik is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in ¶ 18 of the Complaint, and therefore, denies these allegations.

19.     Telerik is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in ¶ 19 of the Complaint, and therefore, denies these allegations.

20.     Telerik is without knowledge or information sufficient to form a belief as to the truth of

the remaining allegations contained in ¶ 20 of the Complaint, and therefore, denies these

allegations.

21.

```csharp
[TestMethod]
public void ShouldMockDateTimeNowWithASimpleArrange()
{
    // Arrange
    Mock.Arrange(()=>DateTime.Now).Returns(new DateTime(2000, 2,

    // Act
    var actual = DateTime.Now;

    // Assert
    Assert.AreEqual(2000, actual.Year);
    Assert.AreEqual(2, actual.Month);
    Assert.AreEqual(20, actual.Day);
}
```

Telerik admits that the above example appears at

http://www.telerik.com/products/mocking.aspx#elevated-mocking. Except as expressly admitted,

Telerik denies the allegations in ¶ 21 of the Complaint.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

**COUNT II**

30.     To the extent a response is required to the allegations of ¶ 30 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-29 of the Complaint. Any allegations of ¶¶ 1-29 of the Complaint not expressly admitted herein are denied.

31.     Telerik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶ 31 of the Complaint, and therefore, denies these allegations..

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

**COUNT III**

40.     To the extent a response is required to the allegations of ¶ 40 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-39 of the Complaint. Any allegations of ¶¶ 1-39 of the Complaint not expressly admitted herein are denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

## COUNT IV

47.     To the extent a response is required to the allegations of ¶ 47 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-46 of the Complaint. Any allegations of ¶¶ 1-46 of the Complaint not expressly admitted herein are denied.

48.     Telerik admits that U.S. Patent No. 9,251,041 is entitled "Method and System For Isolating Software Components." Telerik admits that U.S. Patent No. 9,251,041 is dated February 2, 2016. Telerik is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in ¶ 48 of the Complaint, and therefore, denies these allegations.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

## COUNT V

57.     To the extent a response is required to the allegations of ¶ 57 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-56 of the Complaint. Any allegations of ¶¶ 1-56 of the Complaint not expressly admitted herein are denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

## COUNT VI

65.     To the extent a response is required to the allegations of ¶ 65 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-64 of the Complaint. Any allegations of ¶¶ 1-64 of the Complaint not expressly admitted herein are denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

## COUNT VII

72.     To the extent a response is required to the allegations of ¶ 72 of the Complaint, Telerik incorporates by reference its responses to the allegations in ¶¶ 1-71 of the Complaint. Any allegations of ¶¶ 1-71 of the Complaint not expressly admitted herein are denied.

73.     Denied.

74.     Denied.

███████████████████████████████████

## PRAYER FOR RELIEF

75.     Telerik denies that Typemock is entitled to any relief, including, but not limited to, ¶¶ A-F of Typemock's Prayer for Relief.

## DEMAND FOR JURY TRIAL

76.     The allegations in ¶ 76 of the Complaint are legal statements to which no response is required.

## AFFIRMATIVE DEFENSES

Telerik asserts the following affirmative defenses and reserves its right to amend its Answer as additional information becomes available:

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The claims of U.S. Patent Nos. 8,352,923 (the "'923 patent") and 9,951,041 (the "'041 patent") are invalid for failing to comply with one or more requirements of the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

3.      Telerik does not infringe and has not infringed either literally or under the doctrine of equivalents any valid and enforceable claim of the '923 patent and the '041 patent.

4.      Telerik does not contribute to or induce others to infringe any valid and enforceable claim of the '923 patent and the '041 patent.

5.      The claims of the '923 patent and the '041 patent are unenforceable on account of Typemock's misrepresentations of small entity status to the United States Patent and Trademark Office.

6.      35 U.S.C. § 287 limits Typemock's claims for damages and prayer for damages.

7.      Typemock's alleged claims for relief for patent infringement are barred under the doctrine of prosecution history estoppel, and Typemock is estopped from claiming that the '923

patent and the '041 patent cover or include any accused Telerik method, system, apparatus, and/or product.

8.      Typemock's claims are barred in whole or in part by the doctrines of estoppel and/or equitable estoppel.

9.      Typemock's claims are barred because the Asserted Patents are unenforceable due to the doctrine of inequitable conduct.

10.     Typemock's claims are barred by licenses and covenants not to sue contained in a license agreement to which it is a party.

## COUNTERCLAIMS

For its counterclaims against Typemock, Telerik alleges as follows:

## NATURE OF ACTION

1.      ~~1.~~    Telerik seeks a declaratory judgment that no valid and enforceable claim of the '923 patent and the '041 patent are, or have been, infringed by Telerik.

2.      ~~2.~~    Telerik seeks a declaratory judgment that the '923 patent and the '041 patent are invalid for failure to comply with the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

3.      Telerik seeks a judgment that Typemock has violated the United States antitrust laws by procuring a patent through fraud on the United States Patent and Trademark Office and by bringing and continuing to prosecute the instant lawsuit with no subjectively or objectively reasonable expectation of succeeding on the merits with respect to infringement, validity, or enforceability.

4.      Telerik seeks a declaratory judgment that Typemock's patents are unenforceable under the doctrine of inequitable conduct.

██████████████████████████████████████

5.      Typemock seeks a judgment that Typemock has breached its ████████ License

Agreement ██████████████████████████████████████

## THE PARTIES

3.6.      3.      Telerik is a corporation formed under the laws of the state of Delaware, and

maintains its corporate headquarters at 201 Jones Road, Waltham, MA 02451 USA.

4.7.      4.      Upon information and belief, based on Typemock's allegations in this action,

Typemock is a company organized under the laws of Israel.

## JURISDICTION AND VENUE

5.8.      5.      These counterclaims arise under at least the Patent Laws of the UnitesUnited

States, 35 U.S.C. §§ 101, *et seq. and.,* the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.,*

the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, and the laws of the state of Massachusetts.

6.9.      6.      This court has subject matter jurisdiction over the counterclaims pursuant to at

least 28 U.S.C. §§ 1331, 1338(a) 1367(a), 2201, 2202, and 220215 U.S.C. § 15.

7.10.      7.      Venue is proper in the United States District Court for the District of

Massachusetts.

## FACTUAL BACKGROUND

11.      8.      On information and belief, Typemock was established in 2004 by its founder and

CEO Eli Lopian.  Mr. Lopian remains Typemock's CEO.  Mr. Lopian is the sole named inventor

on the two Asserted Patents in this case, U.S. Patent Number 8,352,923 (the "'923 patent") and

U.S. Patent Number 9,251,041 (the "'041 patent").

8.12.      In its Complaint, Typemock alleges that Telerik's JustMock product infringes claims of

the '923 patent and the '041 patent.

9.13.   9.      Telerik denies that it has infringed a valid and enforceable claim of the '923 patent and the '041 patent.

10.14.   10.      The '923 patent and the '041 patent are invalid for failure to comply with the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

15.      Both prior to and since the filing of this lawsuit, Typemock has engaged in a course of predatory and anticompetitive behavior that demonstrates a specific intent to monopolize the market for unit testing software with private mocking capabilities.  On information and belief, Typemock has sought to enforce patents that it knows are invalid and unenforceable against Telerik.  On information and belief, Typemock knows that its patents are invalid and unenforceable because they were fraudulently obtained from the United States Patent and Trademark Office ("USPTO").

16.      No reasonable litigant would have an expectation of succeeding on the merits with respect to validity and enforceability, in view of Typemock's and its representatives' actions, statements, and omissions during prosecution of the Asserted Patents.

17.      Typemock's predatory and anticompetitive behavior also includes asserting that its patents are infringed, both through a pre-suit demand letter and through bringing and continuing to prosecute the instant lawsuit, in spite of a license agreement that prevents it from doing so. On information and belief, Typemock knew or should have known that its license agreement prevented it from claiming and being able to prove that Telerik infringes the Asserted Patents, yet sent a pre-suit demand letter, commenced, and prosecuted the instant lawsuit anyway.

18.     On information and belief, no reasonable litigant would have a realistic expectation of success on infringement, in view of agreements that Typemock entered in to prior to commencing the instant lawsuit.

19.     Though these proceedings are in their infancy, they have already revealed evidence of Typemock's specific intent to monopolize the market for unit testing software with private mocking capabilities and of its anticompetitive conduct that is leading toward a dangerous probability that it will achieve a monopoly in that market.

## PROSECUTION OF THE ASSERTED PATENTS

20.     On March 23, 2009, U.S. Patent Application Number 12/442,948 (the "'948 application") was filed with the USPTO, listing Eli Lopian as the sole named inventor.  The '948 application was nationalized into the United States from International Application Number PCT/IL2007/001152.  According to publicly-available assignment data, the assignment of the '948 application from Eli Lopian to Typemock Ltd. was recorded in the USPTO on July 20, 2010.  The '948 application would ultimately issue as the '923 patent.

21.     On information and belief, Typemock, by and through individuals associated with the filing and prosecution of the '948 application, made material misstatements or willful material omissions during the prosecution of the '948 application to deceive the USPTO into granting it a patent it was not entitled to.

22.     The filing of the '948 application triggered the duty of candor for each individual associated with the filing and prosecution of a patent application, which includes a duty to disclose all information known to be material to patentability.  37 C.F.R. § 1.56.  Mr. Lopian acknowledged the duty of candor in a declaration executed and filed with the USPTO on April 30, 2012 in which Mr. Lopian declared: "I/we acknowledge the duty to disclose to the United

States Patent and Trademark Office all information known to me/us to be material to patentability as defined in 37 CFR 1.56 . . . ."

23.     In spite of this duty, neither Mr. Lopian nor anyone else associated with the filing and prosecution of the '948 application ever disclosed that versions of the Typemock product were on sale or in public use prior to the earliest critical date to which the '948 application was entitled.  On information and belief, the individuals associated with the filing and prosecution of the '948 application, including Mr. Lopian, knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '948 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '948 application.

24.     The Patent Act provides that "[a] person shall be entitled to a patent unless … the invention was … in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States …" 35 U.S.C. §102.  Because a purported invention being in prior public use or on sale would invalidate by anticipation any claim directed to that purported invention, any such prior public use or sale would be not only material to a USPTO examiner, but would foreclose a patent issuing for that purported invention.

25.     On April 30, 2012, the applicant amended the claims of the '948 application to recite additional elements not included in the claims as originally filed, in order to overcome a non-final rejection entered by the USPTO examiner.  On information and belief, the individuals associated with the filing and prosecution of the '948 application submitted the April 30, 2012 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which

the '948 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '948 application.

26.     Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the April 30, 2012 claim amendments, the individuals associated with the filing and prosecution of the '948 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '923 patent.

27.     On July 9, 2012, the applicant re-submitted the amended claim set originally submitted on April 30, 2012.  On information and belief, the individuals associated with the filing and prosecution of the '948 application submitted the July 9, 2012 re-submitted claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '948 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '948 application.

28.     Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the July 9, 2012 claim amendments, the individuals associated with the filing and prosecution of the '948 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '923 patent.

14

29.     On September 29, 2012, the applicant submitted further amendments to the claims of the '948 application, which included additional elements not recited in the claims as originally filed or as previously amended, in order to overcome a rejection entered by the USPTO examiner.  On information and belief, the individuals associated with the filing and prosecution of the '948 application submitted the September 29, 2012 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '948 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '948 application.

30.     Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the September 29, 2012 claim amendments, the individuals associated with the filing and prosecution of the '948 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '923 patent.

31.     On information and belief, individuals associated with the filing and prosecution of the '948 application also participated in at least five interviews with the USPTO examiner to discuss the patentability of the pending claims, including on April 25, 2012, June 26, 2012, August 7, 2012, September 28, 2012, November 26, 2012, but failed to disclose the existence of the early versions of Typemock's software.  Individuals associated with the filing and prosecution of the '948 application also submitted a Request for Continued Examination, again without disclosing the existence of the early versions of Typemock's software.

32.     The '948 application issued as the '923 patent on January 8, 2013.  The early versions of Typemock's software never appear in the '948 application file wrapper as having been presented to or considered by the Examiner.

33.     On December 6, 2012, U.S. Patent Application Number 13/706,711 (the "'711 application") was filed with the USPTO, listing Eli Lopian as the sole named inventor.  The '711 application was filed as a continuation of the '948 application.  According to publicly-available assignment data, the assignment of the '711 application from Eli Lopian to Typemock Ltd. was recorded in the USPTO on September 11, 2013.

34.     On information and belief, Typemock, by and through individuals associated with the prosecution of the '711 application, made material misstatements or willfully material omissions during the prosecution of the '711 application to deceive the USPTO into granting it a patent it was not entitled to.

35.     The filing of the '711 application triggered the duty of candor for each individual associated with the filing and prosecution of a patent application, which includes a duty to disclose all information known to be material to patentability.  37 C.F.R. § 1.56.  Mr. Lopian acknowledged the duty of candor in a declaration executed on April 30, 2012 and filed with the USPTO on December 6, 2012 in which Mr. Lopian declared: "I/we acknowledge the duty to disclose to the United States Patent and Trademark Office all information known to me/us to be material to patentability as defined in 37 CFR 1.56 . . . ."

36.     In spite of this duty, neither Mr. Lopian nor anyone else associated with the filing and prosecution of the '711 application ever disclosed that versions of the Typemock product were on sale or in public use prior to the earliest critical date to which the '711 application was entitled.  On information and belief, the individuals associated with the filing and prosecution of

16

the '711 application, including Mr. Lopian, knew or should have known early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

37.      The Patent Act provides that "[a] person shall be entitled to a patent unless … the invention was … in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States …"  35 U.S.C. § 102.  Because a purported invention being in prior public use or on sale would invalidate by anticipation any claim directed to that purported invention, any such prior public use or sale would be not only material to a USPTO examiner, but would foreclose a patent issuing for that purported invention.

38.      On June 10, 2013, the applicant cancelled all pending claims of the '711 application and proposed twenty-four new claims in their place.  On information and belief, the individuals associated with the filing and prosecution of the '711 application submitted the June 10, 2013 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

39.      Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the June 10, 2013 claim amendments, the individuals associated with the filing and prosecution of the '711 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior

public uses and offers for sale/sales anticipated the application that would mature into the '041 patent.

40.      On September 12, 2013 and November 21, 2013, the applicant re-submitted the twenty-four new claims first submitted on June 10, 2013.  On information and belief, the individuals associated with the filing and prosecution of the '711 application submitted the September 12, 2013 and November 21, 2013 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

41.      Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the September 12, 2013 and November 21, 2013 re-submitted claim amendments, the individuals associated with the filing and prosecution of the '711 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '041 patent.

42.      On August 31, 2014 the applicant amended the claims of the '711 application to recite additional elements not included in the claims as they had been previously amended, in order to overcome a rejection entered by the USPTO examiner.  On information and belief, the individuals associated with the filing and prosecution of the '711 application submitted the August 31, 2014 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical

date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

43.     Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the August 31, 2014 claim amendments, the individuals associated with the filing and prosecution of the '711 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '041 patent.

44.     On October 22, 2014, the applicant re-submitted claim amendments originally submitted on August 31, 2014.  On information and belief, the individuals associated with the filing and prosecution of the '711 application submitted the October 22, 2014 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

45.     Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the October 22, 2014 re-submitted claim amendments, the individuals associated with the filing and prosecution of the '711 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '041 patent.

46.      On March 19, 2015 the applicant amended the claims of the '711 application to recite additional elements not included in the claims as they had been previously amended, in order to overcome a rejection entered by the USPTO examiner. On information and belief, the individuals associated with the filing and prosecution of the '711 application submitted the March 19, 2015 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

47.      Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the March 10, 2015 claim amendments, the individuals associated with the filing and prosecution of the '711 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated the application that would mature into the '041 patent.

48.      On August 23, 2015, the applicant amended the claims of the '711 application to recite additional elements not included in the claims as they had been previously amended, in order to overcome a rejection entered by the USPTO examiner.  On information and belief, the individuals associated with the filing and prosecution of the '711 application submitted the August 23, 2015 claim amendments even though they knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which the '711 application was entitled may have been capable of operating in accordance with the purported inventions claimed in the '711 application.

████████████████████████████████

49.      Instead of making the Examiner aware of the earlier versions of Typemock's software after the filing of the August 23, 2015 claim amendments, the individuals associated with the filing and prosecution of the '948 application withheld material information from the USPTO with the deceptive intent of preventing the USPTO from discovering the existence of the prior public uses and offers for sale/sales of the earlier versions of the software and concluding that those prior public uses and offers for sale/sales anticipated claims of the application that would mature into the '041 patent.

50.      On information and belief, individuals associated with the filing and prosecution of the '711 application also participated in at least three interviews with the USPTO examiner to discuss the patentability of the pending claims, including on January 20, 2015, July 21, 2015 and September 2, 2015, but failed to disclose the existence of the early versions of Typemock's software.  Individuals associated with the filing and prosecution of the '711 application also submitted a Request for Continued Examination, again without disclosing the existence of the early versions of Typemock's software.

51.      The '711 application issued as the '041 patent on February 2, 2016.  The early versions of Typemock's software never appear in the '711 application file wrapper as having been presented to or considered by the Examiner.

**THE ███████████████████ LICENSE AGREEMENT**

52.   ██████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

53.      On information and belief, Typemock entered into a ███████████ License Agreement
████████████████████████████████████████████



54.     On information and belief, the ███████ Agreement, ███████████

███████ preclude Typemock from asserting or proving that Telerik's JustMock product

infringes the Asserted Patents.

55.

56.

57.   ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

## THE MARKET AND BARRIERS TO ENTRY

58.    Typemock and Telerik both offer unit testing software, where that software includes, among other things, private mocking capabilities.

59.    Unit testing permits testing of, for example, individual software components to determine whether those individual components function for their intended purpose.  A subset of unit testing includes "mocking" or "faking" components or behaviors of components, while at the same time isolating those components from the rest of the components making up a software program.  The use of mocking allows a component to be tested under "real" conditions without running the risk of adversely affecting other software components.

60.    Mocking can be a valuable part of unit testing because it allows for faster and more efficient testing as compared to unit testing without mocking.  Private mocking can be especially valuable because it permits private methods, which can be a common failure point in software application development, to be mocked.  Mocking private methods and testing applications that utilize private methods is not straightforward.

61.    On information and belief, Typemock sells its Isolator product as a purported "complete solution from *mocking* to coverage to test suggestion" and lists examples on its website that purport to show how a user can use the Isolator product to mock or fake objects and methods

within software, without having to modify legacy or production code.  Typemock boasts that "thousands of companies around the world use Typemock's unit testing tools to ensure software agility and quality as well as to prevent code decay."

62.     On information and belief, Typemock and Telerik are, if not the only two companies that offer a unit testing software product that has private mocking capabilities, provide the great majority of such products available in the market.  The ability to mock private methods is sought after by customers and is a selling point for both Typemock and Telerik.

63.     The relevant geographic market is worldwide.

## THE PRESENT INFRINGEMENT CASE

64.     On information and belief, Typemock filed and prosecuted the instant lawsuit with no reasonable expectation of succeeding on the merits with respect to infringement, validity, and enforceability.  Typemock knew or should have known (a) that the patents had been obtained through fraud on the USPTO and were therefore unenforceable, (b) that anticipatory early versions of its software were on sale or in public use prior to the earliest critical date of each Asserted Patents and were therefore invalid, and (c) that it was precluded by ██████████ ████████  from alleging that Telerik's JustMock product infringes the Asserted Patents. Knowing what Typemock did about its Asserted Patents prior to the filing of the complaint, no reasonable litigant could expect to succeed on the merits with respect to infringement, validity, and enforceability.  Likewise, Typemock itself could have no subjective expectation of success on the merits.

65.     Instead, Typemock filed the instant lawsuit only to interfere with Telerik's business and business relationships, for example, by signaling to the market that Telerik is an infringer in order to extract an unreasonable fee to license the Asserted Patents.  And, on information and

belief, Typemock sought injunctive relief, which, if it prevailed, would make it the only other player in the market for unit testing software with private mocking capabilities.

66.     Typemock's anticompetitive conduct began prior to its filing this lawsuit against Telerik. On November 4, 2016, counsel for Typemock sent Telerik a demand letter, alleging that Typemock's JustMock product infringed the Asserted Patents.  On information and belief, Typemock sent this demand letter when it knew or should have known that the ███████ Agreement precluded it from asserting that JustMock infringed the Asserted Patents.

67.     After sending its demand letter and in spite of its obligations ████████████ ████████  Typemock filed the instant suit against Telerik anyway, on December 15, 2016.

68.     Typemock's infringement assertions that ran counter to its obligations ███████ ████████  began in its complaint, ████████████████████

69.  ████████████████████████



70. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

71. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

72.     Typemock's continued anticompetitive conduct over the course of this case is further evidence of its intent to interfere with Telerik's business.  Typemock has continued to prosecute the instant action even after being confronted with evidence demonstrating the invalidity and unenforceability of the Asserted Patents.  On April 28, 2017, Telerik served its first set of interrogatories in this case on Typemock.  Typemock responded with objections and responses on May 31, 2017.  On information and belief, Typemock's responses were incomplete, in particular for failing to identify versions of its software made prior to the earliest possible priority date of the Asserted Patents, even though the identification of such versions was squarely within the scope of Telerik's discovery requests.

73.     Only after Telerik's counsel pointed out Typemock's omissions did Typemock agree to amend and supplement its incomplete interrogatory responses.  Telerik's counsel was able to ascertain the inaccuracy and incompleteness of Typemock's responses based on publicly-available information on Typemock's website regarding earlier versions of Typemock's products.

74.     On October 3, 2017, Typemock served "Amended and Supplemental" objections and responses to Telerik's first set of interrogatories.  This time, Typemock identified versions of its software that existed prior to the earliest critical date of the Asserted Patents, and provided further information regarding, among other things, the circumstances surrounding the development and functionality of such earlier versions.  In addition, Typemock made substantive corrections to other portions of its first interrogatory responses that bear directly on the issue of whether its early products were on sale or in public use.

75.     Specifically, Typemock identified several versions of its product that existed prior to the earliest critical date to which the Asserted Patents are entitled that "could be downloaded from Typemock's web site for testing."  Typemock also disclosed, for the first time, that "there were two payments associated with licenses" for the early versions of its products, "one activated on August 22, 2005 to a company believed to be based in the U.K., and the other activated on August 3, 2005, to a company believed to be based in the U.S."

76.     Typemock also responded that it "has not been able to locate the source code" for the earliest versions of its products.  However, "[t]o the best recollection of the inventor, and based on available Release Notes, versions made before the Critical Date, including versions 2.2-2.3.9, had limited functionality, *but may have been capable of operating in accordance with claims 1 and 50 of the '923 patent and claim 1 of the '041 patent*."

77.      On information and belief, Typemock willfully omitted the supplemental information provided in its Amended and Supplemental interrogatory responses from its initial responses, because it knew or should have known that such information would demonstrate to Telerik and the Court that its Asserted Patents are invalid and unenforceable.

78.      On October 31, 2017, shortly after being forced to correct its Interrogatory responses, Typemock served on Telerik its "First Amended Preliminary Disclosure of Claims Infringed," in which it dropped fourteen of nineteen originally-asserted claims of the '923 patent and all nine of nine originally-asserted claims of the '041 patent, including *all* of the previously-asserted independent claims of both patents.

79.      On information and belief, the claims were dropped because Typemock realized that Telerik had figured out what Typemock knew or should have known all along—its patent claims are invalid.  On information and belief, Typemock also dropped certain claims in an attempt to mask the unenforceability of the Asserted Patents so that it could continue to prosecute the instant lawsuit.

80.      On information and belief, Typemock has and intends to continue to attempt to enforce its invalid and unenforceable patents in an anticompetitive manner, also extracting exorbitant license fees through demands or sham litigation, both of which can have a chilling effect on companies' decisions to continue offering unit testing software with private mocking capabilities.

81.      Typemock's predatory and anticompetitive actions have forced Telerik to expend significant time and financial and human resources to defend against this litigation.  On information and belief, Typemock's actions, which have the effect of labeling Telerik as an

infringer, will have a negative effect on customers' choosing to adopt or continue using Telerik's JustMock product to fulfill their unit testing with private mocking capability needs.

## COUNTERCLAIM – COUNT I DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '923 PATENT

11.82.  11.    Telerik incorporates by reference the allegations of ¶¶ 1-1081 of these Counterclaims as if fully set forth herein.

12.83.  12.    Typemock filed suit against Telerik and has alleged in its Complaint that Telerik is infringing the '923 patent.

13.84.  13.    Telerik has reasonable apprehension that Typemock will continue to assert claims of infringement of the '923 patent against Telerik.

14.85.  14.    Telerik has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '923 patent.

15.86.  15.    Typemock's action in asserting that Telerik infringes the '923 patent have caused an actual and justiciable case or controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 regarding Telerik's non-infringement of the '923 patent.

16.87.  16.    Telerik is therefore entitled to a declaratory judgment that it has not and does not infringe the '923 patent.

## COUNTERCLAIM – COUNT II DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '041 PATENT

17.88.  17.    Telerik incorporates by reference the allegations of ¶¶ 1-1081 of these Counterclaims as if fully set forth herein.

18.89.  18.    Typemock filed suit against Telerik and has alleged in its Complaint that Telerik is infringing the '041 patent.

19.90.   19.   Telerik has reasonable apprehension that Typemock will continue to assert claims of infringement of the '041 patent against Telerik.

20.91.   20.   Telerik has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '041 patent.

21.92.   21.   Typemock's action in asserting that Telerik infringes the '041 patent have caused an actual and justiciable case or controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 regarding Telerik's non-infringement of the '041 patent.

22.93.   22.   Telerik is therefore entitled to a declaratory judgment that it has not and does not infringe the '041 patent.

## COUNTERCLAIM – COUNT III DECLARATORY JUDGMENT OF INVALIDITY OF THE '923 PATENT

23.94.   23.   Telerik incorporates by reference the allegations of ¶¶ 1-1081 of this Counterclaim as if fully set forth herein.

24.95.   24.   Typemock filed suit against Telerik and has alleged in its Complaint that Telerik is infringing the '923 patent.

25.96.   25.   The '923 patent is invalid for failure to comply with the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

26.97.   26.   Typemock's action in asserting that Telerik infringes the '923 patent have caused an actual and justiciable case or controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 regarding the validity of the '923 patent.

27.98.   27.   Telerik is therefore entitled to a declaratory judgment that the '923 patent is invalid.

███████████████████

**COUNTERCLAIM – COUNT IV DECLARATORY JUDGMENT OF INVALIDITY OF**

**THE '041 PATENT**

28.99.  28.——Telerik incorporates by reference the allegations of ¶¶ 1-1081 of this

Counterclaim as if fully set forth herein.

29.100.          29.——Typemock filed suit against Telerik and has alleged in its Complaint that

Telerik is infringing the '041 patent.

30.101.          30.——The '041 patent is invalid for failure to comply with the Patent Laws of

the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

31.102.          31.——Typemock's action in asserting that Telerik infringes the '041 patent have

caused an actual and justiciable case or controversy within the jurisdiction of this Court under 28

U.S.C. §§ 2201 and 2202 regarding the validity of the '041 patent.

32.103.          32.——Telerik is therefore entitled to a declaratory judgment that the '041 patent

is invalid.

**COUNTERCLAIM – COUNT V WALKER PROCESS FRAUD, ATTEMPTED**

**MONOPOLIZATION UNDER 15 U.S.C. § 2**

104.    Telerik incorporates by reference the allegations of ¶¶ 1-81 of this Counterclaim as if

fully set forth herein.

105.    On information and belief, individuals associated with the filing and prosecution of the

'948 application and the '711 application, which would mature into the Asserted Patents, made

material misrepresentations and omissions to the USPTO, including by failing to make the

USPTO aware that early versions of the Typemock software were in public use or on sale prior

to the earliest possible critical date for both applications.  On information and belief, the

individuals associated with the filing and prosecution of the '948 and '711 applications

submitted claim amendments and withheld information about the early versions of Typemock's software with deceptive intent, in order to conceal from the USPTO information that it knew or should have known would anticipate the claims of both applications.

106.    On information and belief, that versions of Typemock's software were in public use or on sale within the meaning of 35 U.S.C. § 102(b) before the earliest critical date of the Asserted Patents was but-for material to the USPTO's examination of the patent applications.  On information and belief, if the individuals associated with the filing and prosecution of the '948 and '711 applications had not knowingly withheld the existence of the early versions of Typemock's software, especially after amending the claims to recite functionality present in those early versions despite knowing that the amendments read on the early versions of Typemock's software, the USPTO would not have issued either of the Asserted Patents.

107.    There is a dangerous probability that Typemock will achieve monopoly power in the market for unit testing software with private mocking capabilities.  On information and belief, Typemock and Telerik are the only two companies that offer unit testing software with private mocking capabilities.  Typemock's enforcement of its fraudulently-obtained patents, in concert with its other predatory and anticompetitive behavior alleged herein, presents a dangerous probability that it will achieve monopoly power in that market.

108.    Telerik has suffered and will continue to suffer antitrust injury in an amount to be proven at trial.  Typemock's attempt to enforce its invalid and unenforceable patents have caused Telerik significant injury, for example, by forcing Telerik to expend significant time and human and financial resources in order to defend the instant action.  On information and belief, Typemock's actions, which have the effect of labeling Telerik as an infringer, will have a negative effect on customers' choosing to adopt or continue using Telerik's JustMock product to

████████████████████████████

fulfill their unit testing with private mocking capability needs.

### COUNTERCLAIM – COUNT VI SHAM LITIGATION, ATTEMPTED
### MONOPOLIZATION UNDER 15 U.S.C. § 2

109.    Telerik incorporates by reference the allegations of ¶¶ 1-81 of this Counterclaim as if fully set forth herein.

110.    On information and belief, Typemock had no subjectively or objectively reasonable expectation of succeeding on the merits with respect to infringement, validity, or enforceability of the Asserted Patents when it filed the instant lawsuit and as it has continued to prosecute the instant lawsuit.  On information and belief, Typemock knew or should have known that its patents were invalid and unenforceable when it filed the lawsuit and prosecuted the lawsuit after Telerik pointed out the invalidity and unenforceability issues.  And, on information and belief, Typemock knew or should have known that ███████████████ precluded it from asserting or proving that Telerik's JustMock product infringes the Asserted Patents.

111.    On information and belief, Typemock's filing and maintenance of the instant suit is objectively baseless, because no reasonable litigant could conclude that Typemock would have a realistic expectation of success in view of the invalidity and unenforceability of its Asserted Patents, ███████████████████████  On information and belief, Typemock did not have probable cause to file and continue to prosecute the instant action because the Asserted Patents are invalid and unenforceable, and because ██████████████████████████ ███████████████████████████████

112.    There is a dangerous probability that Typemock will achieve monopoly power in the market for unit testing software with private mocking capabilities.  On information and belief,

Typemock and Telerik are the only two companies that offer unit testing software with private mocking capabilities.  Typemock's enforcement of its fraudulently-obtained patents, in concert with its other predatory and anticompetitive behavior alleged herein, presents a dangerous probability that it will achieve monopoly power in that market.

113.    Telerik has suffered and will continue to suffer antitrust injury in an amount to be proven at trial.  Typemock's attempt to enforce its invalid and unenforceable patents have caused Telerik significant injury, for example, by forcing Telerik to expend significant time and human and financial resources in order to defend the instant action.  On information and belief, Typemock's actions, which have the effect of labeling Telerik as an infringer, will have a negative effect on customers' choosing to adopt or continue using Telerik's JustMock product to fulfill their unit testing with private mocking capability needs.

**COUNTERCLAIM – COUNT VII DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR INEQUITABLE CONDUCT OF THE '923 PATENT**

114.    Telerik incorporates by reference the allegations of ¶¶ 1-81 of this Counterclaim as if fully set forth herein.

115.    Typemock filed suit against Telerik and has alleged in its Complaint that Telerik is infringing the '923 patent.

116.    Telerik has reasonable apprehension that Typemock will continue to assert claims of infringement of the '923 patent against Telerik.

117.    Typemock's action in asserting that Telerik infringes the '923 patent have caused an actual and justiciable case or controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 regarding Telerik's non-infringement of the '923 patent.

118.    Telerik is therefore entitled to a declaratory judgment that the '923 patent is unenforceable for inequitable conduct during prosecution of the '948 application, which matured into the '923 patent.

**COUNTERCLAIM – COUNT VIII DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR INEQUITABLE CONDUCT OF THE '041 PATENT**

119.    Telerik incorporates by reference the allegations of ¶¶ 1-81 of this Counterclaim as if fully set forth herein.

120.    Typemock filed suit against Telerik and has alleged in its Complaint that Telerik is infringing the '041 patent.

121.    Telerik has reasonable apprehension that Typemock will continue to assert claims of infringement of the '041 patent against Telerik.

122.    Typemock's action in asserting that Telerik infringes the '041 patent have caused an actual and justiciable case or controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 regarding Telerik's non-infringement of the '041 patent.

123.    Telerik is therefore entitled to a declaratory judgment that the '041 patent is unenforceable for inequitable conduct during prosecution of the '711 application, which matured into the '041 patent.

**COUNTERCLAIM – COUNT IX BREACH OF CONTRACT**

124.    Telerik incorporates by reference the allegations of ¶¶ 1-81 of this Counterclaim as if fully set forth herein.

125.

█████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

126.    Typemock has breached and likely will continue to breach that covenant by bringing and continuing to prosecute the instant lawsuit.  ████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

127.    ██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████

128.    Telerik has suffered damage as a result of Typemock's breach ███████████ ████████  including at least by forcing Telerik to expend significant time and human and financial resources in order to defend the instant action.  On information and belief, Typemock's actions, which have the effect of labeling Telerik as an infringer, will have a negative effect on customers' choosing to adopt or continue using Telerik's JustMock product to fulfill their unit testing with private mocking capability needs.

### COUNTERCLAIM – COUNT X MASS. GEN. LAWS CH. 93A § 11

129.    Telerik incorporates by reference the allegations of ¶¶ 1-81 of this Counterclaim as if fully set forth herein.

███████████████████████████████

130.    Telerik is a "person who engages in the conduct of any trade or commerce."  Specifically, Telerik is engaged in in the conduct of trade or commerce in that it sells software products.

131.    Typemock used or employed "an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two."  Specifically, on information and belief, Typemock sent its November 4, 2016 pre-suit demand letter ██████████████████████ ████████████████████████████████████████████ ███████████████████████████████ (b) while it knew or should have known that its patent was invalid and unenforceable.

132.    Telerik's headquarters is located in Waltham, Massachusetts.  Though Typemock addressed its letter to a Telerik office in Austin, Texas, Telerik had no operations in Texas at that time.

133.    In addition, Typemock knowingly and willfully filed and continued to prosecute the instant, baseless, lawsuit, while it knew that it had no objective or subjective likelihood of succeeding on the merits and for no purpose other than to unfairly interfere with competition and with Telerik's legitimate business.

134.    Telerik has responded to Typemock's baseless lawsuit from its headquarters in Waltham.  Typemock continued to prosecute the lawsuit after it was transferred to the District of Massachusetts.

135.    Telerik has suffered damage as a result of Typemock's unfair practices, including at least by forcing Telerik to expend significant time and human and financial resources in order to defend the instant action.  On information and belief, Typemock's actions, which have the effect of labeling Telerik as an infringer, will have a negative effect on customers' choosing to adopt or continue using Telerik's JustMock product to fulfill their unit testing with private mocking

████████████████████████████

capability needs.

**RELIEF REQUESTED**

Telerik prays for relief as follows:

A.      Dismiss with prejudice Typemock's claims against Telerik;

B.      Deny Typemock's request for damages, costs, expenses, attorneys' fees and interest;

C.      Enter Judgment in favor of Telerik against Typemock;

D.      Declare that Telerik and its products and services have not infringed and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '923 patent and the '041 patent, willfully or otherwise;

E.      Declare that the claims of the '923 patent and the '041 patent are invalid;

~~F~~F.      Declare that the claims of the '923 patent and the '041 patent are unenforceable under the doctrine of inequitable conduct.

G.      Declare that Typemock has violated the United States antitrust laws and award Telerik any damages, costs, expenses, attorneys' fees, and interest as the Court deems just and proper.

H.      Declare that Typemock has breached ████████████████████████ ██████  and award Telerik any damages, costs, expenses, attorneys' fees, and interest as the Court deems just and proper.

I.      Declare that Typemock has committed unfair business practices in violation of Mass. Gen. Laws ch. 93A, and that such violation was willful and knowing, entitling Telerik to treble damages.

J.      Declare this case to be exceptional pursuant to 35 U.S.C. § 285 and award to Telerik its

attorneys' fees and costs incurred in connection with this action; and

GK.      Grant Telerik other and further equitable relief or legal relief as the Court deems just and

proper.

Dated:  ~~March 23, 2017~~April 12, 2018

Respectfully submitted,

/s/ Steven M. Bauer

Steven M. Bauer (BBO # 542531)
~~John M. Kitchura, Jr.~~James R. Anderson (BBO # ~~681542~~693781)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
(617) 526-9600 *telephone*
(617) 526-9899 *facsimile*
sbauer@proskauer.com
~~jkitchura~~jaanderson@proskauer.com

Attorneys for Telerik, Inc.