**REDACTED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS
# BOSTON DIVISION

|  |  |
|---|---|
| TYPEMOCK, LTD., | Case No.: 1:17-cv-10274-RGS |
| Plaintiff, | |
| v. | |
| TELERIK INC., | |
| Defendant. | JURY TRIAL DEMANDED |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER AND COUNTERCLAIMS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ......................................................................................................... 3

    1.   Timeliness of Amendment.......................................................................................... 3

    2.   Inequitable Conduct ................................................................................................... 4

ARGUMENT ...................................................................................................................... 6

    1.   Telerik Has Not Justified its More Than Six-Month Delay in Making This Motion .......... 6

    2.   The Charge of Inequitable Conduct Fails to Sufficiently Plead Knowledge or Deceptive

    Intent (Counts VII & VIII and Affirmative Defense ¶ 9) ......................................... 8

    3.   The Proposed Amended Answer Fails to Plead Facts Defining the Relevant Market

    Alleged to Have Been Monopolized (Counts V & VII) .......................................... 11

    4.   Telerik's Breach of Contract Counterclaim Fails Because ██████████████████

    ███████████████████████████████████ (Count IX and

    Affirmative Defense ¶ 10) ...................................................................................... 15

    5.   Telerik's State Law Claim Fails Because Telerik's Defenses are not Even Properly Pled

    (Count X) ................................................................................................................ 19

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367 (Fed. Cir. 2012) ..........................................5

*Aldabe v. Cornell Univ.*, No. CV 16-12268-NMG, 2017 WL 5178783 (D. Mass. Nov. 7, 2017) ..........................................................................................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................5

*Bryan Corp. v. Chemworth, Inc.*, No. 12–10446–MLW, 2013 WL 6489785 (D. Mass Dec. 9, 2013) ...............................................................................................................................4

*C.R. Bard, Inc. v. Med. Elecs. Corp.*, 529 F. Supp. 1382 (D. Mass. 1982) ............................11

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347 (Fed. Cir. 2007) ...............................................................................................................4

*Cruz v. Bristol-Myers Squibb Co., PR, Inc.*, 699 F.3d 563 (1st Cir. 2012) ..............................4

*D'Agostino v. ev3, Inc.*, 845 F.3d 1 (1st Cir. 2016) ...................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ...................... *passim*

*George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547 (1st Cir. 1974)....12

*Gilbuilt Homes, Inc. v. Cont'l Homes of New England, a Div. of Wylain, Inc.*, 667 F.2d 209 (1st Cir. 1981) ................................................................................................................11

*Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992) .......................................16

*Marical Inc. v. Cooke Aquaculture Inc.*, No. 14-cv-00366-JDL, 2017 WL 3254693 (D. Me. July 31, 2017)) ........................................................................................................................6

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995)......................................................9

*O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152 (1st Cir. 2004)..........................................3, 6

*Steir v. Girl Scouts of the USA*, 383 F.3d 7 (1st Cir. 2004) ...................................................4, 6

*Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ........

.................................................................................................................................... *passim*

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315 (1st Cir. 2008) ......................3

*U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40 (1st Cir. 2009) ......................................4

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)   ................

.................................................................................................................................11

## Rules

Fed. R. Civ. P. 9(b)……………………………………………………………………5

Fed. R. Civ. P. 12(f)……………………………………………………………………4

Fed. R. Civ. P. 15(a)……………………………………………………………………4

Fed. R. Civ. P. 16(b)(4)..................................................................................... 3-4, 6

## Other Authorities

Adv. Comm. Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b)....................................3

**INTRODUCTION**

Defendant Telerik, Inc. ("Defendant" or "Telerik") moves to amend its pleading to add a variety of counterclaims, leading with alleged inequitable conduct and monopolization. As is so often the case with these types of counter-charges to infringement, they are asserted here, without support of the crucial element of intent, as a distraction, to divert all momentum and energy away from litigation on the merits. *See generally Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) (*en banc*).

Telerik's motion to amend is also untimely, made well after the August 18, 2017 deadline for amending the pleadings (D.I. 35) and more than six months after having all of the information referenced in its amendment. Defendant offers no excuse for this delay, but merely argues that Plaintiff is somehow not prejudiced by this amendment, which is false. The question, moreover, is not one of prejudice to Plaintiff, but rather diligence (or lack thereof) by Defendant. Defendant has not been diligent in making its amendment, and its motion should be denied on this ground alone.

Beyond Defendant's lack of diligence, Defendant's proposed Amended Answer suffers from numerous flaws, which render all of the proposed counterclaims and affirmative defenses futile.

The core of this motion is alleged inequitable conduct, an affirmative defense to infringement, based on alleged fraud on the Patent Office. The defense of inequitable conduct requires proof by clear and convincing evidence as to both (i) the "but for" materiality of the alleged misrepresentations, and (ii) that the alleged misrepresentations were made to the Patent Office with the deliberate intent to deceive. Inequitable conduct, because of its sweep and potential collateral consequences, is prone to, and has a long history of, abuse. For that reason,

1

the Federal Circuit has tagged it as the "'atomic bomb' of patent law" and "an absolute plague" on this branch of litigation. *See Therasense*, 649 F.3d at 1288-89. As a result, the Federal Circuit, whose law governs the pleading standard for inequitable conduct, sets a heightened pleading standard for such charges. *See generally Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).

Defendant's proposed counterclaim of inequitable conduct may immediately be seen as deficient, in that it fails to adequately plead intent to deceive. Defendant must plead sufficient allegations of underlying facts from which a court can infer that an identified individual knew of withheld material information and withheld this information "with a specific intent to deceive" the Patent Office. *Exergen*, 575 F.3d at 1328–29. Defendant's allegations are vague and point generally to "individuals associated with the filing and prosecution" of Plaintiff's patents. The only individual named in Defendant's proposed counterclaims is Eli Lopian, the inventor of the asserted patents and the CEO of Plaintiff, Typemock, Ltd. The most that Defendant has alleged about Mr. Lopian is that he "knew or should have known" that certain software versions were on sale in the U.S. Yet, the Federal Circuit has specifically stated that a "'should have known' standard does not satisfy [the] intent requirement" for inequitable conduct, which requires a "specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. Nor are there any factual allegations to the effect that Mr. Lopian understood the materiality of what he "knew or should have known," among other deficiencies in the pleading. Absent an adequate pleading of deceptive intent, a pleading of inequitable conduct is subject to dismissal, and therefore amendment to make such allegations would be futile.

Telerik's proposed Amended Answer also includes two separate counterclaims for alleged antitrust violations pursuant to Section 2 of the Sherman Act. But any such claim under

2

the Sherman Act requires an adequate pleading with regard to the relevant market in order to proceed. The proposed Amended Answer is wholly conclusory on this score, and indeed completely implausible in its contrived market definition.

Finally, Defendant argues that it is a third-party beneficiary  by virtue of a ▬▬▬ agreement between Plaintiff and Microsoft Corporation (the "Microsoft Agreement"), and as such is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬. Defendant's allegations, however, fail to allege facts under which Telerik could plausibly ▬▬▬▬▬▬▬▬▬▬▬. Telerik's motions to add a claim and defense with respect to the Microsoft Agreement should therefore also be denied.

## **LEGAL STANDARD**

1. <u>Timeliness of Amendment</u>

After a scheduling order's deadline for filing an amendment has passed, pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, an amendment can only be made for "good cause." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 327 (1st Cir. 2008). The purpose of limiting the period for amendment is to assure "that at some point both the parties and the pleadings will be fixed." Adv. Comm. Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b). This "good cause" requirement contrasts with an otherwise liberal standard of Rule 15(a), for pre-deadline amendments.

"Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004). Prejudice to the opposing party remains relevant but is not the dominant criterion. *Id.* "This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the

party-opponent." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004); *see also Cruz v. Bristol-Myers Squibb Co., PR, Inc.*, 699 F.3d 563, 569-70 (1st Cir. 2012) (affirming denial of two motions to amend complaint with unexplained three-month delay and further six-month delay).

Under both Rules 15(a) and 16(b)(4), however, the Court "enjoys significant latitude in deciding whether to grant leave to amend" and the Court's decision receives deference "if any adequate reason for the denial is apparent on the record." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (quotations omitted). Reasons for denying leave to amend include, among others, futility of the amendment. *Id.* Futility is determined based on the same standard as a motion to dismiss. *See D'Agostino v. ev3, Inc.*, 845 F.3d 1, 6 (1st Cir. 2016) (futility in the context of a motion to amend "means that the complaint, as amended, would fail to state a claim upon which relief could be granted.")

Regarding affirmative defenses, Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense." Rule 12(f) is governed by the same standards as a 12(b)(6) motion. *See Bryan Corp. v. Chemworth, Inc.,* No. 12–10446–MLW, 2013 WL 6489785, at *1 (D. Mass Dec. 9, 2013).

### 2. Inequitable Conduct

The adequacy of an inequitable conduct pleading is a question of Federal Circuit Law. *See, e.g., Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). The Federal Circuit's *en banc* decision in *Therasense* tightened the standards for inequitable conduct. In so doing, the Federal Circuit specifically chose to "redirect a doctrine that has been overused to the detriment of the public." *Therasense*, 649 F.3d at 1290.

Under Rule 9(b) and Federal Circuit precedent, specific allegations are required to adequately plead inequitable conduct. "[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual

(1) knew of the withheld material information or of the falsity of the material misrepresentation, and

(2) withheld or misrepresented this information with a specific intent to deceive the PTO."

*Exergen*, 575 F.3d at 1328–29. These allegations must include "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

Allowing improperly pleaded inequitable conduct claims to proceed would "effectively eviscerate *Therasense's* test for *mens rea* and reinflict the plague of patent unenforceability based on the thinnest of speculation regarding the applicant's putative mental state." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375 (Fed. Cir. 2012). For an adequate pleading, Defendant must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well pled facts must be accepted as true on a motion to dismiss, but such acceptance is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

# **ARGUMENT**

1.  <u>Telerik Has Not Justified its More Than Six-Month Delay in Making This Motion</u>

Telerik admits in its brief that by October 3, 2017 it had all of the information on which it bases its proposed amendment. (Def. Telerik's Mem. in Supp. of its Mot. for Leave to Am. its Answer and Countercls. (D.I. 55) ("Motion") at 3.) Despite this fact, Telerik waited six and a half months to file the instant motion seeking leave to amend. Telerik only argues why it allegedly could not have known this information prior to the October 2-3, 2017 timeframe. (*Id.*) Telerik gives no reason whatsoever for its six-and-a-half-month delay between gaining this information and making this motion. This unexplained delay of many months dooms Telerik's motion to amend. *See O'Connell*, 357 F.3d at 155.

The focus of the Rule 16(b)(4) "good cause" standard is the diligence (or lack thereof) of the moving party. *Steir*, 383 F.3d at 12. Telerik ignores this focus and fails to explain its lack of diligence. As stated by Telerik, "[t]he Court's discretion on whether good cause exists 'should be exercised on the particular facts and circumstances of the case.'" (Motion at 2 (quoting *Marical Inc. v. Cooke Aquaculture Inc.*, No. 14-cv-00366-JDL, 2017 WL 3254693, at *4 (D. Me. July 31, 2017)). In the *Marical* case, the information for the proposed amendment was learned by the defendant during an inventor deposition on March 21, 2017, and the motion to amend was filed on April 21, 2017 – within a month of learning this information. The defendant in *Marical* did not wait six months to file its motion, as Telerik has done here. Further, as stated by the court in *Marical*, "it was appropriate for Defendants to depose [the inventor] before advancing a claim of inequitable conduct." *Marical*, 2017 WL 3254693, at *6 (citing *Baxter Int'l, Inc. v. CareFusion Corp.*, No. 15-CV-9986, 2017 WL 1049840, at *9 (N.D. Ill. Mar. 20, 2017)).

According to Telerik, "[a]ny gap in time between Typemock's provision of this information and the filing of the instant motion is solely due to Typemock's delay in disclosing this information to Telerik." (Motion at 3.) This is the sole argument Telerik advances for its six-month delay in making the instant motion and is a *non sequitur*. Receiving this information in early October 2017 did not cause the six-month delay. Telerik's own lack of diligence did.[1]

Telerik alleges a lack of prejudice to Plaintiff here, but that is incorrect. The claims that Telerik is attempting to belatedly add to this action are of a type that are notorious for multiplying patent litigation proceedings, including discovery on matters not pertinent to the claims or defenses currently included in the case. Further, the parties agreed to review and produce all or substantially all documents in this case by the end of April, which review Typemock has substantially completed, and which was a significant undertaking. Adding claims and defenses at this late stage of documentary discovery, which will require new document requests, would severely prejudice Plaintiff.

Because Telerik has not justified its delay in making the instant motion and (less so) because Typemock will be prejudiced by the proposed amendment, Telerik's motion should be denied.

---

[1] The information that Telerik has now chosen to focus on was not, for example, buried in a large production. Typemock produced a single, 10-page document (the Microsoft license agreement) on October 2 (*see* Anderson Decl., Ex. 3 (D.I. 56-3)) and served amended interrogatory responses on October 3 (*see* Anderson Decl., Ex. 2 (D.I. 56-2)).

2. <u>The Charge of Inequitable Conduct Fails to Sufficiently Plead Knowledge or Deceptive Intent (Counts VII & VIII and Affirmative Defense ¶ 9)</u>

As the Federal Circuit has mandated, an inequitable conduct pleading must include the "who" of the alleged conduct. However, Telerik has failed to specifically identify who withheld the allegedly material information.

Telerik has repeatedly stated that "Typemock, by and through individuals associated with the filing and prosecution of the [patents], made material misstatements or willful material omissions," and that "neither Mr. Lopian nor anyone else associated with the filing and prosecution" of the applications disclosed the allegedly material information. (*See* Telerik's Proposed Am. Answer (D.I. 56-1) ("Am. Answer") ¶¶ 21, 23.) It is unclear from the proposed amendment whether Telerik is accusing Mr. Lopian of a failure to disclose information that Mr. Lopian knew to be material and contrary to his application being granted a patent, or whether Telerik is accusing the one or more "individuals associated with the filing and prosecution" of the patents in question of failing to disclose to the Patent Office material information that Mr. Lopian supposedly may have disclosed to such individuals.

Assuming that Telerik is accusing Mr. Lopian (the only individual actually named in the proposed amendment) of failure to disclose the allegedly material information, the proposed amendment is insufficient on its face with regard to intent. A pleading of inequitable conduct "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . (1) knew of the withheld material information . . . and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29.

It is impossible to discern Telerik's theory of inequitable conduct from the proposed pleading. The pleading does not specify who is alleged to have committed the inequitable conduct – whether Mr. Lopian deliberately withheld information from the attorney(s) prosecuting the patent applications in question – or whether Mr. Lopian disclosed material information to his attorney(s) and that the (as-yet unnamed) attorney(s) made the deliberate decision to withhold this information. The entire basis is left unstated in Telerik's allegations. Yet neither hypothesis necessarily follows from the facts alleged.

The most that Telerik alleges regarding Mr. Lopian's knowledge of the alleged on-sale activity is the repeated formulaic mantra that "Mr. Lopian, knew or should have known that early versions of Typemock's software that were on sale or in public use prior to the earliest critical date to which [Typemock's patent applications were] entitled may have been capable of operating in accordance with the purported inventions claimed [therein]." (Am. Answer ¶¶ 23, 25, 29, 36, 38, 40, 42, 44, 46, and 48.) In each case, the allegation recites the words "or should have known." However, as stated by the Federal Circuit "[a] finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense*, 649 F.3d at 1290 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995).

At most, the only relevant allegations regarding Mr. Lopian plausibly supported by the pleaded facts are that he was aware or should have been aware of the sales activity in question. There are no allegations from which it can be inferred that Mr. Lopian knew of the alleged

materiality of that information to patentability, or indeed even knew that there was such a thing as an on-sale bar under U.S. patent law. There is no allegation that Mr. Lopian himself withheld information from anyone, just that the information did not get to the patent examiner.

As for the other un-named individuals referred to in the proposed pleading as having been associated with patent prosecution, there is no allegation as to what, if anything, Mr. Lopian might have informed them about regarding any on-sale activity. There is no factual basis pleaded for even imputing any improper intent to those individuals. What one person may have told the other and/or failed to report is completely left to speculation, as is their intent in doing so or failing to do so.

Indeed, there is nothing whatsoever in Telerik's allegations regarding intent. Telerik states only – repeatedly and conclusorily – that information was withheld "with . . . deceptive intent." Telerik's repeating of this statement a full ten times in its proposed pleadings does not make it any less conclusory. There are no facts from which one can plausibly infer intent from Telerik's proposed Amended Complaint. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F. 3d at 1329 n.5. But there are no facts here from which one can make such an inference.

According to the Federal Circuit, proving that an applicant knew of a reference, should have known of its materiality, and failed to disclose the reference to the PTO is insufficient on its own to prove a specific intent to deceive. *Therasense*, 649 F.3d at 1290. That is the most that can be inferred from Telerik's allegations, though even that is unclear. Per *Therasense*, the law is that there is no legal shortcut to presume deceptive intent from the bare fact that a disclosure was not made, yet that is what this proposed pleading would ask the Court to do. It is essential that the

requisite intent be supported by evidence that would support a necessary inference, with a corresponding obligation to plead such facts.

In sum, at a minimum, the proposed amended answer fails to plead facts to plausibly support an allegation of deceptive intent in withholding material information. Telerik's proposed inequitable conduct pleading therefore cannot be allowed. Therefore, Telerik's two separate counterclaims and its affirmative defense of inequitable conduct must be deemed futile and leave to assert them denied.

3.   The Proposed Amended Answer Fails to Plead Facts Defining the Relevant Market Alleged to Have Been Monopolized (Counts V & VII)

The Court should think long and hard about whether there is truly a monopolization claim here before opening the gates for this type of protracted litigation.

An antitrust counterclaim, especially a claim for alleged monopolization, is another type of claim most certain to balloon discovery and cost in patent litigation. An antitrust claim often reflexively follows a defense of inequitable conduct, as the left foot follows the right. But as Telerik's own cited authority amply establishes, not every patent confers monopoly power. It is always "necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).

Indeed, a plaintiff must allege sufficient facts in order to state each element of the antitrust violation, including the relevant market and every other element. *See C.R. Bard, Inc. v. Med. Elecs. Corp.*, 529 F. Supp. 1382, 1389 (D. Mass. 1982); *Gilbuilt Homes, Inc. v. Cont'l Homes of New England, a Div. of Wylain, Inc.*, 667 F.2d 209, 211 (1st Cir. 1981) (affirming dismissal of Section 2 claim because of "material omission" of pleadings of "facts defining the

market"). "To establish monopolization or attempt to monopolize a part of trade or commerce under s 2 of the Sherman Act, it would [] be necessary to appraise the exclusionary power of the ([accused party's] conduct) in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure [the accused party's] ability to lessen or destroy competition." *Id.* at 177. "The market for a product must be defined not by focusing on a single factor alone but by evaluating the reasonable limits of that product's effective competition with other products." *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 552 (1st Cir. 1974) (*citing Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 326 (1962); *United States v. E. I. duPont de Nemours & Co.*, 353 U.S. 586, 593 (1957); *Standard Oil Co. v. United States*, 337 U.S. 293, 299 n.5) (1949)). "Such limits are drawn according to the cross-elasticity of demand for the product in question— the extent to which purchasers will accept substitute products in instances of price fluctuation and other changes." *Whitten*, 508 F.2d at 552. "[W]hen determining if a complaint sufficiently pleads the existence of a monopoly in a market, district courts require specific economic data such as defendant's market share, market trends, entry barriers, geographic market and the defendant's economic power in that market." *Aldabe v. Cornell Univ.*, No. CV 16-12268-NMG, 2017 WL 5178783, at *4 (D. Mass. Nov. 7, 2017) (citing *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F.Supp.2d 146, 157 (D. Mass. 2003)).

Moreover, Telerik fails to plead the requisite facts to support a claim under Section 2 of the Sherman Act.

First, the monopolization claims here depend on the viability of the other claims being asserted. The monopolization claims can only be asserted here if Telerik has sufficiently pleaded what it alleges as the underlying acts of monopolization, (i) that the patents in question were obtained by fraud, and/or (ii) that Typemock deliberately proceeded with this case when it "knew

or should have known" that ████████████████████████████████████████.[2] As shown elsewhere in this brief, Telerik has not met the pleading threshold as to either such predicate.

Second, Telerik has failed to adequately plead the relevant antitrust market. Telerik has self-declared the market in question to be an extremely limited one – a supposed economic "market" for a "unit testing software product that has private mocking capabilities" – with no further description or explanation (Am. Answer ¶ 62.) This bare statement falls far short of the required facts for defining a relevant market. This is not only a purported single-product market, but one based on a single attribute of a single product. The assertion that such an artificially defined market, tailored to Telerik's desired allegations, actually exists in the real world is pure pretense. There is absolutely no discussion in the proposed pleading of how product capabilities are typically grouped together for sale, potential substitutes, competition, or elasticity of demand. There are no allegations about the size of the market or the market share of the participants. The pleading is insufficient on its face.

Worse yet, Telerik presents self-contradictory statements about the number of parties in the alleged market. Telerik pleads that "Typemock and Telerik are **the only two companies** that offer unit testing software with private mocking capabilities." (Am. Answer ¶¶ 107, 112 (emphasis added).) Telerik separately pleads that "**Typemock and Telerik** are, if not the only two companies that offer a unit testing software product that has private mocking capabilities, **provide the great majority of such products available** in the market." (*Id.* ¶ 62 (emphasis

---

[2] The pleading in this regard is wholly conclusory. Telerik does not allege that prior to this motion it even so much as raised with Typemock the issue of a purported ████████████ ████████████████████████.

added).) Telerik separately pleads that Typemock "intends to continue to attempt to enforce" its patents, which would allegedly "have a chilling effect on **companies' decisions** to continue offering unit testing software with private mocking capabilities." (*Id.* ¶ 80 (emphasis added).) Telerik cannot plead this every which way. The allegations of "monopolization" are also in conflict with other portions of the same pleading, which note that ████████████████

████████████████████████████████████████████████████

███████████████████████████ (likely a much broader one) that actually is relevant.[3]

Further, Telerik alleges that "[t]he relevant geographic market is worldwide." (*Id.* ¶ 63.) It is unclear how a worldwide market could possibly be affected by U.S. patents, and Telerik makes no such allegations. Therefore, even if the Court accepted that Telerik's alleged market was properly pled (which it is not), there is no pleading that the asserted patents, let alone the specific patent claims at issue in this case, provide Telerik with market power in the "worldwide" alleged market for unit testing software with private mocking capabilities. There are no allegations about the scope of the worldwide market, how the U.S. market fits within the

---

[3] Similarly, the Court can take notice that Telerik has asserted to this Court in its Markman brief herein, that

> "[t]he accused product, Telerik's JustMock, is available as part of Telerik's DevCraft platform, a toolkit including .NET and JavaScript components and tools for the development and testing of modern and high-performance applications. DevCraft is available in multiple versions, each of which bundles several products together, dependent on a user's needs. **Users most commonly receive access to Telerik's JustMock product along with purchase of a DevCraft bundle**"

(D.I. 60, at 1-2 (emphasis added)) - showing that Telerik itself does not believe in the absurdly narrow market definition set forth in the present motion, but rather views the market in which it actually competes as being the broader market for software development utility software. Put another way, Telerik itself caters to buyers who view themselves in the market for a broader package than the one Telerik advocates for its market definition. Further details, should the Court desire them, are readily available on Telerik's web site: https://www.telerik.com/devcraft

worldwide market, or how any of the assertions in this litigation provide Typemock with power on a worldwide basis.[4]

Accordingly, even assuming a viable pleading of fraud and/or ████████████████ ████████ (which is separately lacking), Telerik's antitrust counterclaims must be deemed futile for failure to have adequately pleaded the relevant market. Therefore its two separate counterclaims under the Sherman Act must be deemed futile and leave to assert them denied.

4. Telerik's Breach of Contract Counterclaim Fails Because ████████████ ████████████████████████████████████████████ (Count IX and Affirmative Defense ¶ 10)

Telerik insinuates that because it ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████ As a result, according to Telerik, this action cannot be maintained against it. (Am. Answer ¶¶ 124-127.)

████████████████████████████████████████

████████████████████████████████████████

██████████████████

████████████████████████████████████████

██████████████████

████████████████████████████████████████

████████████████████████████████████

---

[4] The Court should also consider whether Telerik would concede the type of lost profits damages that would logically appear to flow from proven infringement in the supposed "market" that it hypothesizes, with only two competitors. A "but for" lost sale would appear to be the necessary corollary of the existence of a "market" tailored to the scope of alleged infringement.

████████████████████████████████████████████████████

██████████

(Am. Answer ¶ 55.) For purposes of the present motion, the Court may accept this

characterization as true. But Telerik's proposed pleading fails to allege facts showing that Telerik

may plausibly ███████████████████████████████ avoid the present charge of patent

infringement.

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████ .

A "license" authorizes acts that would constitute infringement but for the grant of the

license. *See, e.g.*, *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 703 (Fed. Cir. 1992). The

putative beneficiary of a license must show that it falls under the license - for those activities

under a patent which are not licensed are infringing.

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ . (Am. Answer ¶ 55.)

The proposed pleading falls short right there.

██████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████ (*See id.* ¶¶ 68, 69, 126.)

16

Merely pleading these references to a ███████████ is not sufficient to establish ███

████████████████████████████████████████████████████████████████

███████████████[5]

As recited in the pleadings herein, the allegations in this case include examples in which Telerik uses **its own software**, which in itself is alleged (by Typemock) to completely satisfy each and every limitation of the asserted claims, to then **act upon** another piece of software, which could be a Microsoft library or operating system routine (or anything else).

The Microsoft routine may be the subject that the Telerik software acts upon - in that the Microsoft routine is ultimately "mocked." But the alleged infringement lies entirely in how Telerik's software controls what is mocked. For an analogy, the right to use a target does not confer any right to use a patented gun that happens to shoot at that target. A license for the target does not amount to a license for the gun.[6]

---

[5] In one example to this effect, Telerik's proposed pleading states that "JustMock is unit testing software with private mocking capabilities that is specifically designed to work with Microsoft's .NET framework technology. JustMock does not function for its intended purpose without resort to Microsoft .NET and other Microsoft-provided technology." (Am. Answer ¶ 70.) This is insufficient. The mere "dependency" of JustMock on Microsoft software, ████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████. The mere dependency of JustMock on external Microsoft functionality is completely irrelevant.

[6] By way of further example, "MSCorlib" is mentioned only once in the Complaint, appearing in a quotation excerpted from Telerik's documentation, explaining that "JustMock also supports mocking of all classes and methods included in the MSCorlib assembly . . . ." (*See* Compl. (D.I. 1) ("Compl.") ¶ 20.) JustMock's support for mocking MSCorlib is ████████████████████ ███████████████ merely one example of what Telerik alleges its infringing product can mock.

Telerik's pleading in fact completely fails to ████████████████████████

████████████████████████████████████████████████████. All it says

is in this regard is the following:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

(Am. Answer ¶ 126 (emphasis added).)

---

████████████████████████████████████████████████████

████████████ nor does the proposed pleading allege that it does.

Microsoft's .NET Framework is mentioned nowhere in the Complaint, while "DateTime.Now" is discussed in paragraphs 12, 21, and 22. Paragraph 12 concerns Telerik's copying of Typemock's product, not anything from Microsoft, giving an example showing the similarity in how Typemock's and Telerik's products may be used to mock other software, for example, Microsoft routines. Paragraphs 21 and 22 reproduce and discuss an excerpt of code provided in Telerik's documentation, which code happens to use the "DateTime.Now" function, again as the object to be mocked. (*See* Compl. ¶ 21, 22.) ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ (*See* Compl. ¶ 22 ("Indeed, the 'Arrange' and 'Returns()' functions employed by JustMock **to implement the claimed functionality** are direct ripoffs of Typemock Isolator's API") (emphasis added).)

Although an identical analysis also holds true for Typemock's Initial Claim Charts referenced in the Amended Answer, Telerik makes only bare allegations concerning the Initial Claim Charts, without any factual support by citing thereto. (*See* Am. Answer ¶¶ 69, 126.) Such "allegations are conclusory and not entitled to be assumed true" (*Iqbal*, 1556 U.S. at 681) and therefore, though without merit, need not be further addressed.

18

These allegations are nothing more than conclusory generalities, ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████. Telerik has not plausibly alleged, as

characterized by Telerik, that ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████" (Am. Answer ¶ 55.) This failure ████████████████████

████████████████████████████████████████████████████████████████████

██████████████████ renders the proposed amendment futile.[7] Leave to assert the breach of

contract counterclaim must therefore be denied.

5.  Telerik's State Law Claim Fails Because Telerik's Defenses are not Even Properly Pled
    (Count X)

Telerik alleges that the current lawsuit is "baseless" (Am. Answer ¶ 133) and therefore

that its prosecution is actionable under Massachusetts law. To begin with, the Court should not

lose sight of the fact that Telerik has not been heard to support any argument that it does not

practice the asserted claims. Telerik's defenses in its proposed Amended Answer, which go only

to enforceability of the asserted patents and ████████████████████████████████

████████████ are not even properly pled. Absent a viable pleading of unenforceability or deliberate

disregard of a license, which has not as yet been done, there is little that stands between Telerik

and a finding of infringement. Without such a plausible pleading of unenforceability, Telerik has

---

[7] Nor, ███████████████████████████████████████ does the proposed pleading set
forth facts to show even a mere breach of contract. The proposed pleading cites ████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████ The proposed amendment does not allege that any such
evidence has or will be introduced.

no basis at this time for alleging unfair trade practices and its counterclaim for MASS. GEN.

LAWS CH. 93A § 11 is futile. Leave to assert the state law claim must therefore be denied.

## **CONCLUSION**

For the foregoing reasons, Telerik's motion for leave to amend its answer should be

denied. Telerik has taken an unexplained and unjustified six months to make this motion.

Further, Telerik's proposed counterclaims and affirmative defenses are all futile.


Dated: April 26, 2018

/s/ Ronald Abramson
Ronald Abramson (admitted pro hac vice)
(ronald.abramson@lbkmlaw.com)
David G. Liston (admitted pro hac vice)
(david.liston@lbkmlaw.com)
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, New York 10174
Tel.: (212) 826-7001

Philip C. Swain
(pcs@foleyhoag.com)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210-2600
Tel.: (617) 832-1000

Attorneys for Typemock, Ltd.

## CERTIFICATE OF SERVICE

On this 26th day of April, 2018, I certify that I caused a copy of Plaintiff Typemock,

Ltd.'s Opposition to Defendant's Motion for Leave to Amend its Answer and Counterclaims to

be served upon the below-listed counsel of record for Defendant via ECF and email.


Dated: April 26, 2018

s/ Ronald Abramson
Ronald Abramson

Steven M. Bauer
James R. Anderson
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
sbauer@proskauer.com
jaanderson@proskauer.com
